IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERMA MOTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 05-0310-WS-M |
| | ) |
| BAYER CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

This matter is before the Court on the defendant's motion to stay, (Doc. 11), and the plaintiff's motion to remand. (Doc. 13). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 13-14, 19-21), and the motions are ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion to stay is due to be denied and that the motion to remand is due to be granted.

**BACKGROUND**

The defendant manufactured the cholesterol drug Baycol, which the plaintiff was prescribed. In August 2004, she sued the defendant in the District Court of Wilcox County, seeking $10,000 in compensatory and punitive damages as a result of the defendant's alleged wrongdoing. Following a bench trial, the court awarded the plaintiff $10,000 (the highest award possible in district court), from which decision the defendant promptly appealed.

In circuit court, the defendant propounded requests for admission, in response to which the plaintiff denied that she could not and would not recover damages in excess of $10,000. (Doc. 1, Exhibit C). The defendant then removed to federal court, claiming jurisdiction based on diversity of citizenship. The plaintiff's motion to remand denies that the defendant has met its burden of establishing that the amount in controversy exceeds $75,000. She also argues that removal was untimely.

Multidistrict litigation concerning Baycol claims was commenced in December 2001 in the

District of Minnesota ("the MDL"). A conditional transfer order in this case was entered on June 9, 2005, but the plaintiff filed a notice of opposition, which remains pending with the MDL panel. The defendant argues that proceedings in this action, including consideration of the plaintiff's motion to remand, should be stayed pending transfer to the MDL. In the alternative, it argues that the motion to remand should be denied on its merits.

**I. Motion to Stay.**

The defendant argues that a stay should issue, despite the pendency of a ripe motion to remand, in order to serve the "interests of judicial economy and consistency." (Doc. 11 at 7). In support of this proposition, the defendant cites two decisions in which the MDL Court denied motions to remand that were based on the amount in controversy. (*Id*.).

If the plaintiff's motion to remand raised intricate legal or quasi-legal issues, and if the MDL Court were already more familiar with those issues than this Court, the interests of judicial economy might be advanced by allowing the MDL Court to bring its expertise to bear on the pending motion to remand.[1] However, as reflected in Part II, the motion to remand presents only a simple, garden-variety attack on the amount in controversy. This Court has resolved similar challenges perhaps two dozen times over the past few years, applying familiar legal principles in the process. This Court will experience no economy by withholding ruling on the motion to remand, and it could scarcely economize the resources of the MDL Court to add this motion to its already heavy burden.[2]

Moreover, and as demonstrated in Part II, it is plain that the defendant has not met its burden of showing the requisite amount in controversy. Given the clarity of the result, it would not further the

---

[1] The MDL Court has issued three opinions resolving motions to remand based on grounds other than amount in controversy. (Doc. 11 at 5 n.2). Those decisions are of course irrelevant to whether the MDL Court is unusually qualified to determine issues concerning amount in controversy.

[2] According to the conditional transfer order, over 6,700 cases have been transferred to the MDL Court. According to the defendant, more are to come. (Doc. 11 at 4). The MDL Court has issued over 140 orders, "has not finished its discovery and other pre-trial work and is still actively managing such issues." (*Id*. at 7 & n.2).

interests of judicial economy to tie up the resources of the MDL Court and the parties simply to obtain the same result in that forum rather than this one.

Similarly, the interests of consistency of result are not impaired by the Court's resolution of the motion to remand, because there is no indication that the MDL Court would decide the motion differently than this Court. The proper resolution of the motion is plain and not susceptible of reasonable dispute. Moreover, as discussed in Part II, the two MDL decisions cited by the defendant involved different facts and so do not suggest that the MDL Court would deny remand in this simple case. The defendant's specter of "multiple courts issu[ing] conflicting orders under similar facts," (Doc. 19 at 10), thus has no application here.[3]

Many courts have concluded that motions to remand should always, or usually, be resolved prior to transfer.[4] The Court need not go so far, but it does accept the proposition that "[a] court should first give preliminary scrutiny to the merits of the motion to remand" and that, "[i]f this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001).[5] Because the plaintiff's motion to remand is facially meritorious, the Court

---

[3] Citing cases and transfer orders, the defendant repeatedly notes that motions to remand "can" be resolved by an MDL court. (Doc. 11 at 3-4 & n.1; Doc. 19 at 5, 7-8). To borrow the defendant's language, (Doc. 19 at 9), this is but a "truism" that does nothing to establish that the MDL Court *should* resolve this particular motion to remand.

[4] *See, e.g., McGrew v. Schering-Plough Corp.*, 2001 WL 950790 at *3 (D. Kan. 2001); *Craft v. United Insurance Co.*, 2002 WL 32509283 at *1 (S.D. Miss. 2002)(collecting cases from Tennessee, West Virginia, Pennsylvania, New Jersey, New York, California and Wisconsin).

[5] The *Meyers* methodology has been widely adopted. *See Hotseller v. Pfizer, Inc.*, 2005 WL 756224 at *2 (S.D. Ind. 2005); *Wisconsin v. Abbott Laboratories*, 2004 WL 2055717 at *1 (W.D. Wis. 2004); *Brock v. Stolt-Nielsen SA*, 2004 WL 1837934 at *2 (N.D. Cal. 2004); *Nekritz v. Canary Capital Partners, LLC*, 2004 WL 1462035 at *2 (D.N.J. 2004); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053-54 (N.D. Cal. 2004); *New Mexico State Investment Council v. Alexander*, 317 B.R. 440, 443-44 (D.N.M. 2004); *Chinn v. Belfer*, 2002 WL 31474189 at *3 (D. Or. 2002); *Board of Trustees v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 902-03 (N.D. Ill. 2002)("When the merits of a remand motion are easy, a decision requires little judicial time and a stay would merely postpone the inevitable," and the "threat of inconsistent judgments

elects to resolve that motion before considering the defendant's motion to stay.

## II. Motion to Remand.

When a complaint demands a specific sum below $75,000, the defendant may not remove unless it appears to a "legal certainty" that the plaintiff's claim exceeds this threshold. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). To do so, the defendant must show that "an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than $[75],000." *Id.* at 1096.

On the other hand, "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Under *Tapscott,* a defendant must show that, if the plaintiff prevails on liability, she will more likely than not be awarded over $75,000.[6]

Although the complaint still demanded the sum certain of $10,000 as of the time of removal, the Court will assume that the lower, *Tapscott* standard applies, since the plaintiff had responded to the

---

... is de minimus"); *see also Illinois Municipal Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004)("Though some district courts stay proceedings during the interim following a conditional transfer order, ..., this is not required where the court concludes that it lacks subject matter jurisdiction.").

[6]*E.g., Hitch v. Laws*, 2000 WL 1005888 at *2 (S.D. Ala. 2000)("Defendants can discharge the burden 'by presenting sufficient evidence that a verdict rendered in favor of [plaintiffs] would exceed $75,000.'")(quoting *Holman v. Montage Group*, 79 F. Supp. 2d 1328, 1330 (S.D. Ala. 1999); *accord Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.*, 995 F. Supp. 1388, 1393 (M.D. Ala. 1998)("In a diversity action where the plaintiff has not made a specific request for damages, the ultimate question the court addresses is whether a defendant has established by a preponderance of the evidence that should the plaintiff prevail on a particular claim, the plaintiff, more likely than not, will recover in excess of the federal jurisdictional prerequisite.").

defendant's requests for admission by denying that her claim was limited to $10,000.[7]  The defendant, however, has failed to carry even this lighter burden.

The defendant first notes that the complaint seeks compensatory damages for pain and suffering and mental anguish, as well as punitive damages.  (Doc. 19 at 12).  True enough, but virtually every personal injury complaint demands such damages; merely listing them furnishes no grounds for predicting the amount of such damages a successful plaintiff will likely recover.

The defendant next cites to the plaintiff's trial testimony that her "complaints ... against Bayer about Baycol" are that she "had pain and weakness in [her] leg and [her] back."  (Doc. 1, Exhibit B at 20; Doc. 19 at 12).  While the plaintiff clarified that she experienced these symptoms in both upper and lower legs and in her lower back, (Doc. 1, Exhibit B at 20-21), nothing in this testimony describes the degree or intensity of her pain and weakness, and nothing in this testimony could support an inference that she experienced any mental anguish other than that necessarily incident to some undescribed degree of leg pain and weakness.  While the plaintiff's vague testimony makes it likely that, if successful at trial, she will be awarded *some* amount for pain and suffering and mental anguish, it does not make it likely that she will be awarded a significant sum.  Given that the defendant had full opportunity to cross-examine the plaintiff concerning her damages (a privilege rarely afforded defendants before removing), its failure to extract anything more than this bland testimony is strongly persuasive that the plaintiff is likely to be awarded only modest compensatory damages.

Next, the defendant points to the complaint's claim for losses that the plaintiff "will likely incur in the future."  (Doc. 19 at 12).  The complaint, however, is not the last word on the subject.  The plaintiff asserts in brief that she experienced her symptoms only "for several weeks" and then "fully recovered."  (Doc. 13 at 3; Doc. 20 at 2).  The defendant, whose ability to cross-examine the plaintiff prior to removal renders it uniquely qualified to challenge such a statement if incorrect, has not done so.  The Court concludes that the plaintiff is not likely to be awarded any damages for future losses.

The defendant also finds significance in the plaintiff's statement in her motion to remand that her

---

[7]The Court will also assume that removal was timely, since it was accomplished within 30 days after receipt of these responses.

injuries were "serious."  (Doc. 19 at 12).  Were there no better evidence of the degree of her problems, this adjective might weigh in the estimation of the amount in controversy.  However, the plaintiff has been examined and cross-examined at trial without any testimony being adduced or presented to this Court which could support the conclusion that her injuries were such as to make a substantial award likely.  The defendant's inability to identify any such evidence despite its extensive probing reflects that no such evidence exists and renders hollow any reliance on the plaintiff's brief to support the amount in controversy.

The defendant cites a district court opinion concluding that the amount in controversy in a Baycol case exceeded $75,000 based on allegations of "significant muscle problems."  *Hester v. Bayer Corp.*, Civil Action 01-D-1301-N (M.D. Ala. 2001).  (Doc. 19 at 13).  The Court reached this conclusion based solely on an award in a single medical products liability case.  (Slip op. at 8-9.).  Since *Hester* was decided, however, the Eleventh Circuit has made plain that "mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of [a defendant's] assertion" that the amount in controversy in a particular case exceeds $75,000.  *Federated Mutual Insurance Co. v. McKinnon Motors LLC,* 329 F.3d 805, 809 (11th Cir. 2003).[8]  Whatever persuasive force *Hester* might have carried previously was drained by *McKinnon Motors*.

Undeterred, the defendant points out that the MDL Court has twice denied motions to remand based on the amount in controversy.  (Doc. 19 at 15-16).  In *Keyser v. Bayer Corp.*, MDL No. 1431, Case No. 02-440, the plaintiff alleged damages from "rhabomyolysis and acute renal failure, ... disability, ... loss of capacity, expense of hospitalization, medical and nursing care, loss of earnings and loss of ability to earn money," in addition to pain and suffering and mental anguish.  (Slip op. at 1-2).  These extreme and varied damages certainly satisfied the amount in controversy, but they are so far removed from those in this case as to render comparison meaningless.

---

[8]At least some of the reasons for this judicial skepticism are readily apparent.  First, many factors influence the award of damages, and these factors are ordinarily heavily fact-intensive.  Second, reliance on published appellate opinions predictably skews the results because appeals are more likely after a large award than a smaller one.  This slant becomes more pronounced when the defendant selectively reports only those published awards favoring its position.

Likewise, in *Amari v. Bayer Corp.*, MDL No. 1431, Case No. 02-1351, the plaintiff alleged injuries including "nausea, fever, dark urine, headaches, digestive problems, fatigue and drowsiness" in addition to the pain and weakness at issue herein. (Slip op. at 1).

The defendant focuses on the co-plaintiff in *Amari*. Plaintiff Barnes alleged "a number of physical maladies, including muscle pain and stiffness, weakness in her legs and general fatigue." (Slip op. at 1). Once again, however, the identified symptoms were more numerous than those of the instant plaintiff, who did not testify to stiffness or fatigue. Moreover, her symptoms lasted only a few weeks, while Barnes' difficulties persisted nine months. (*Id.*). In addition, the MDL Court did not purport to list all of the plaintiffs' alleged damages, using instead the non-exclusive terms "such as" and "including." (*Id.*). Finally, the decision in *Amari* was based only on the allegations of the complaint, while in this case the decision reflects the defendant's inability to identify evidence supporting a probability of significant damages even after taking the plaintiff's testimony under oath.

The defendant thus turns to the plaintiff's demand for punitive damages. (Doc. 19 at 12, 17). Of course, "[t]he mere fact that [a] plaintiff seeks punitive damages does not mean that the federal jurisdictional minimum is satisfied." *Walker Petroleum v. CSX Transportation, Inc.*, 2001 WL 102359 at *1 (S.D. Ala. 2001). The two most reliable predictors of a punitive damages award are the amount of compensatory damages and the egregiousness of the defendant's conduct. As noted, the defendant has failed to present evidence from which it may be inferred that the plaintiff is likely to be awarded substantial compensatory damages. With respect to the quality of its alleged misconduct, the defendant relies solely on certain words included in the complaint — terms of art that are legal prerequisites to any award of punitive damages under Alabama law and which shed no light on the probable amount of such an award in this case.

Finally, the defendant rallies behind the plaintiff's responses to requests for admission. (Doc. 19 at 17). However, a plaintiff's "refus[al] to stipulate that [her] damages do not exceed and will not exceed the sum of $75,000.00 ... standing alone does not satisfy [the defendant's] burden of proof on the jurisdictional issue," because "[t]here are several reasons why a plaintiff would not so stipulate. " *Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001). The defendant's problem is even

greater, because the plaintiff did not refuse to admit that her damages do not exceed $75,000 but only that her damages do not exceed $10,000. That is, the plaintiff's responses are perfectly consistent with damages below the jurisdictional threshold and do nothing to suggest that they are greater.

As in most cases, it remains possible that the plaintiff will be awarded more than $75,000 should she prevail. Mere possibility, however, is not enough to carry the defendant's burden of supporting removal. Because the defendant has failed to show by a preponderance of the evidence that the plaintiff will more likely than not be awarded damages exceeding the jurisdictional threshold, removal was improper and remand is required.

## CONCLUSION

For the reasons set forth above, the defendant's motion to stay is **denied** and the plaintiff's motion to remand is **granted**. This action is **remanded** to the Circuit Court of Wilcox County.

DONE and ORDERED this 8th day of July, 2005.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE